Nicholson, C. J'.,
delivered. the opinion of the Court.
This was an action for damages by Stone against the railroad company for killing a horse, tried before a Justice of the Peace, and taken by appeal to the Circuit Court of Sumner county, where judgment was given against the railroad company for the value of the horse.
The engineer proved that the horse was struck on the 20th of September, 1867, at 10| o’clock at night, near milepost 156, north of Gallatin. He did not see the horse struck; supposed it was the horse, as something was struck there, and he saw the dead horse the next day. He did not see anything at the time. He was at his post, and he saw something fly off the cow-catcher.
The night was very dark. The head-lights were in order and burning at the time. He was looking ahead at the time. They were on a heavy down grade, and the steam was shut off, — using no steam.
The fireman, ¥m. Sanford, proved that he was sitting on the fireman’s seat of the engine, looking *470 ahead; he saw the glimpse of something, but could not tell whether it was a horse or a cow or what.
When he first saw it the engine was right on it. There was no time to put down brakes. The striking was almost simultaneous with his seeing the object. It was a heavy down grade. It was also proven that the head-light enables the engineer to see ahead while running at night, about one hundred yards in front of the engine: it does not enable him to see on either side of the track at any great distance.
The Court charged the jury, that if the engine ran over and killed the horse, the railroad company would be liable, “ unless you should find that they used all the precautions prescribed by the statute — that is, to have white men only as engineers; to keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout ahead, and when any person, animal or other obstruction appears upon the road, to sound the alarm-whistle, put down the breaks, and employ every possible means to stop the train and prevent accidents, etc. If you find that these precautions were observed by the employees of the company, notwithstanding the engine run over and killed plaintiff’s horse, they would not be liable.”
This charge is in the exact language of the Code, s. 1166, sub-s. 5. It differs from the language used in the act of 1855-6, c. 94, s. 8. That act required railroad companies to have a special agent on the engine, whose undivided duty it was to lookout ahead. Such was the construction of the act in the case of the Memphis & Charleston Railroad Company v. Dean, *471 5 Sneed, 291. This act was amended by the act of 1857-8, c. 44, s. 3, so as to “require all railroad ‘companies to keep the engineer, fireináñ, or some one ‘else, always on the lookout ahead when the train is in motion/’ This language is carried into the Code, and in this language the Circuit Judge charged the jury-
Looking at the facts as proved by the engineer and fireman as true, and they are entirely uncontra-dicted, it appears that both the engineer and fireman were looking ahead at the time the accident occurred. Neither of them saw anything on the track ahead, and it was only at the time the horse was struck when he was seen, or at least the witness says the striking and his seeing the horse were almost simultaneous. It was then impossible to avoid the accident by putting down the brakes.
The probability is that the horse was on the side of the road, and attempted to fun across, and was struck by the engine. Upon what ground the jury found their verdict, we are at a loss to determine, unless they were misled by the use of the word “always” in the charge. The Judge told them; in the language of the statute, that the company was to keep the engineer, fireman, or some other person, always upon the lookout ahead. Of course, the Judge did not mean that the company should prove that they had kept the engineer, fireman, or some one else; on the' lookout ahead all the way from Louisville; that is hot whát th'é laiv féc[iiiréd to be proved, but that this precaution was being observed when the accident *472 occurred. Yet, the language used, without further explanation, may have misled the jury, and we are forced to conclude that this accounts for a verdict which is not supported by the evidence, except an erroneous interpretation of the charge.
The judgment is therefore reversed.